## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MICHIGAN

**GALE JUGOVICH,**

       *Plaintiff,*

  vs.

**3M COMPANY**
3M Center
Bldg. 224-5N-40
2501 Hudson Rd.
Maplewood, Minnesota, 55144

      *Defendant.*

Case No:

**JURY TRIAL DEMANDED**

## COMPLAINT - CIVIL ACTION

**COME NOW** the Plaintiff, above-named, by and through his attorneys, OLIVER LAW GROUP P.C., bringing this Complaint seeking judgment against Defendant **3M COMPANY,** and allege as follows:

### INTRODUCTION

This action is brought by Plaintiff, Gale Jugovich, a decorated veteran of the United States Army who bravely served our country from 2003 to 2015. Gale Jugovich's service to his country has included deployment to Iraq. Gale Jugovich continued to serve his country in the Army/National Guard until medically retired. Like his fellow soldiers, Gale Jugovich served his country admirably and with the expectation that the companies that provided his equipment, safety products, and arms would provide safe and effective products that complied with applicable safety and government standards. That was not

1

the case for the ear protection provided to Gale Jugovich and his fellow service members. For over a decade, 3M sold the military defective and unsafe combat earplugs for use by Gale Jugovich and others, exposing our military service members to injuries and increased risks on the battlefield, and during the course of training for those combat deployments. Shockingly, 3M provided these defective earplugs knowing that the safety devices failed to provide the protection that was advertised and promised to the Armed Forces.

1.      Plaintiffs, Gale Jugovich  is an adult individual and citizen of the State of Michigan, City of Portland.

2.      Defendant, **3M COMPANY ("3M")** is a company or business organization organized and existing under and by virtue of the laws of Delaware, with its principal place of business located at 3M Center, Bldg. 224-5N-40, 2501 Hudson Rd., Maplewood, Minnesota 55144. Defendant 3M Company is registered to transact business in the Commonwealth of Pennsylvania and may be served with process on its registered agent, CT Corporation System, 600 North 2nd St., Suite 401 Harrisburg, Pennsylvania 17101.

3.      Among other things, Defendant, 3M is m the business of designing, manufacturing, and selling worker safety products, including hearing protectors and respirators, and is one of the largest companies in the United States.

4.      At all times relevant hereto, Defendant 3M acted by and through its respective agents, servants, workmen and employees, who were acting within the scope of their authority and employment.

## <u>JURISDICTION  AND VENUE</u>

5.      At all times relevant hereto, Defendant, 3M, purposely established significant contacts in Pennsylvania, including but not limited to, registration as a foreign corporation doing

business in Michigan, and has carried out, and continues to carry out, substantially continuous and systematic business activities in Michigan.

6.      This court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy is greater than $75,000.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 139l(b)(1), as Defendant, 3M, has purposely established significant contacts in the Western District of Michigan.

8.      Plaintiff Gale Jugovich is a resident of Michigan and has significant contact with Michigan.

## FACTS

9.      Plaintiff, Gale Jugovich, entered the military in 2003.

10.     Prior to joining the military, Plaintiff had no signs or symptoms of hearing issues, hearing loss, or tinnitus.

11.     Plaintiff was stationed at Fort Campbell Kentucky prior to deployment.

12.     Mr. Jugovich was deployed in Iraq from 2005-2006.

13.     Plaintiff was issued 3M's Dual-Ended Combat Arms™ (hereinafter, "3M Dual-Ended Combat Arms") by the Army's Central Issue Facility.

14.     During Plaintiff's deployment and during his pre-deployment training and post deployment training, the 3M Dual-Ended Combat Arms earplugs were standard issue.

15.     During his deployment and training missions, small arms, heavy artillery and rockets were used and discharged in proximity to Plaintiff.

16.     During his training and deployments, Plaintiff was required to wear, and did wear the 3M Dual-Ended Combat Arms™ ear protection in the field.

17.     As a direct and proximate result of the Defendant's conduct, as more fully discussed below, Plaintiff was caused to sustain severe, disabling and catastrophic injuries

including, but not limited to, tinnitus, and partial hearing loss.

18.     As a direct and proximate result of Defendant's conduct, Plaintiff has in the past, and continues to suffer pain, mental anguish, loss of independence, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on his ability to engage in normal activities and pleasures of life, as well as other intangible losses.

19.     As a direct and proximate result of Defendant's conduct, Plaintiff has in the past required, continues to require, and in the future will require medical treatment and care, and has in the past, continues presently, and may in the future incur the cost of medicines, durable medical equipment and things, medical care, hospitalizations, treatment, future operations, testing, and rehabilitation and attempts to alleviate and/or cure his conditions.

20.     As a direct and proximate result of Defendant's conduct, Plaintiff has been prevented and/or limited and will in the future be prevented and/or limited from performing his usual duties, activities, occupations and avocations and has suffered a loss of earnings, loss of earnings capacity, and may be permanently impaired.

## THE 3M DUAL-ENDED COMBAT ARMS EARPLUGS

21.     The 3M Dual-Ended Combat Arms™ were developed by Aearo Technologies, Inc., (hereinafter, "Aearo"), a 3M company, which developed, marketed, and sold the Dual-Ended Combat Arms™ earplugs until being acquired by Defendant, 3M Company in 2008.

22.     Upon information and belief, by way of consolidation, merger, or asset transfer, Defendant, 3M Company, Inc. entered into an agreement with Aearo and/or its shareholders which amounted to a consolidation of the entities, merger, or de facto merger, by which 3M Company assumed liability for the actions of Aearo, and which permitted 3M Company to continue the operations of Aearo including the continuation of the Dual-Ended Combat Arms™ product line (hereinafter, "The Merger").

23.     Upon information and belief, the Merger permitted 3M Company the exclusive right to manufacture the Dual-Ended Combat Arms™, permitted 3M Company the exclusive

right to distribute Dual-Ended Combat Arms™ and permitted 3M Company to have exclusive use of the name Dual-Ended Combat Arms™.

24. Upon information and belief, 3M received and/or had access to all information associated with the Dual-Ended Combat Arms™.

25. 3M acquired both the assets and liabilities of Aearo. Thus, Aearo and 3M are used interchangeably and all allegations against Aearo are directed as a matter of law against 3M Company and vice versa.

26. The Dual-Ended Combat Arms™ earplugs were developed for the specific purpose of providing service members with a single set of earplugs that provide two options for hearing attenuation depending on how they are worn.

27. The earplugs can be worn in two ways, first, the wearer can put the open or "unblocked" position (yellow in ear) to block, or at least significantly reduce, loud impulse sounds associated with military service. This position was designed to allow serviceman to hear quieter noises such as commands spoken by fellow servicemen and approaching enemy combatants. Second, the earplugs can also be worn in a closed or "blocked" position (olive in ear) to block, or at least significantly reduce, all sounds.



28.  With this design, Aearo/3M won a series of Indefinite-Quantity Contracts ("IQCs") to be the exclusive supplier of selective attenuation earplugs to the U.S. military between 2003 and 2012 and continuing as a non-exclusive provider thereafter.

29.  In order to be the exclusive supplier during the relevant years and a continued supplier thereafter, Aearo/3M represented that the Dual-Ended Combat Arms™ earplugs would meet specific performance criteria established by the U.S. Government as a prerequisite for bidding on the IQC for earplugs.

30.  At all times, Aearo/3M's performance representations were false; and Defendant knew them to be false. These dangerous defects were known to Aearo/3M in 2000 before submitting a bid in response to the military's Request for Proposal ("RFP").

31.  At all relevant times, the Dual-Ended Combat Arms™ earplugs had a dangerous design defect that caused them to imperceptibly loosen in the wearer's ear, thus allowing damaging sounds to enter the ear canal around the outside of the earplug.

32.  Specifically, the basal edge of the third flange of the non-inserted end of the earplug is prone to press against some wearers' ear canals and fold back to its original shape, thereby loosening the seal in their ear canals.

33.  Because the earplug is symmetrical, the defect exists regardless of which end is inserted into the ear.

34.  Aearo/3M learned of this design defect when it completed and/or performed testing of the Dual-Ended Combat Arms™ earplugs.

35.  The value and effectiveness of earplugs has been standardized under federal law through a Noise Reduction Rating ("NRR"). The testing and labeling of earplugs such as the Combat Arms™ earplugs to achieve an NRR is governed by federal regulations promulgated by

the Environmental Protection Agency ("EPA") pursuant to the Noise Control Act, 42 U.S.C. §

4901 *et seq.* Specifically, 40 C.P.R. §211.206-1 provides:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is approved as the American National Standards Institute Standard (ANSI-STD) S3.19-1974.

36.     Further, 40 C.P.R. §211.204-4(e) requires that specific supporting information

accompany hearing protection devices sold in the United States:

> The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user. In the case of bulk packaging and dispensing, such supporting information must be affixed to the bulk container or dispenser in the same manner as the label, and in a readily visible location.... Instructions as to the      proper insertion or placement of the device.

### FALSE AND MANIPULATED TEST RESULTS

37.     Employees from Aearo/3M began testing the Dual-Ended Combat Arms™

earplugs in or around January 2000 at its own laboratory. Aearo/3M selected ten test subjects and

intended to test: (1) the subject's hearing without an earplug inserted; (2) the subject's hearing

with the open/unblocked (yellow) end of the Dual-Ended Combat Arms™ earplug inserted; and

(3) the subject's hearing with the closed/blocked (olive) end of the Dual-Ended Combat Arms™

earplug inserted. This testing was designed to provide data regarding the "NRR" of the Dual-

Ended Combat Arms™ earplugs.

38.     Aearo/3M personnel monitored the results of each subject as the test was

performed and could thus stop the test if the desired NRR results were not achieved.

39.     Eight of the ten subjects were tested using both the open and closed end of the

Dual-Ended Combat Arms™ earplug.

40.     Aearo/3M terminated the January 2000 testing of the closed end of the dual-ended Combat Arms™ earplug because the eight subjects averaged an NRR of 10.9. This was neither an expected nor a positive score for Aearo/3M.

41.     Aearo/3M determined that when the closed, olive end of the earplug was inserted into the wearer's ear according to standard fitting instructions, the basal edge of the third flange of the open, yellow end would press against the wearer's ear and fold backwards. When the inward pressure on the earplug was released, the yellow side flanges would return to their original shape and cause the earplug to loosen.

42.     The symmetrical nature of the earplug prevents a proper fit when worn either open (yellow end) or closed (olive end) according to the standard fitting instructions.

43.      Aearo/3M personnel determined that a proper fit requires the flanges on the opposite, non-inserted end of the ear plug to be folded back prior to insertion.

44.     Aearo/3M completed testing of all ten subjects with the "open" or "unblocked" (yellow end) position of the Dual-Ended Combat Arms™ earplug to obtain a facially invalid -2 NRR, which would indicate that the closed end of the earplug actually amplified sound.

45.     Aearo/3M represented the -2 NRR as a "0" NRR which Aearo/3M has displayed on its packaging since its launch.

46.     Aearo/3M falsely promotes "0" NRR as a benefit of the Dual-Ended Combat Arms™ earplug. A showing of "0" means that a serviceman is able to hear fellow soldiers and enemies while still providing some protection. However, the true -2 NRR actually amplifies sound thereby exposing the hearer to harm.

47.     After identifying the design defect, Aearo/3M re-tested the olive, closed end of the Dual-Ended Combat Arms™ earplug in February 2000  using manipulated fitting

instructions. Aearo/3M personnel used the manipulated instructions to tell the subjects to fold back the yellow flanges on the open end of the Dual-Ended Combat Arms™ earplug before insertion.

48.     Using this manipulated fitting procedure, Aearo/3M obtained a "22" NRR on the closed end (olive) of the Dual-Ended Combat Arms™ earplugs.

49.     The manipulated instruction, however, was never properly warned by Aearo/3M to serviceman. Aearo/3M never properly warned serviceman that the only potential way to obtain a "22" NRR was to manipulate the Dual-Ended Combat Arms™ earplug by folding the yellow flanges on the opposite end.

50.     Aearo/3M never retested the "open" or "unblocked" position (yellow end) of the Dual-Ended Combat Arms™.

## FALSE CERTIFICATION TO THE U.S. MILITARY

51.     Aearo/3M knew at the time it bid for the initial IQC that the Dual-Ended Combat Arms™ earplugs had dangerous design defects and did not adequately warn of the defects or adequately warn how to wear the earplugs.

52.     Aearo/3M responded to the military's Requests for Proposal ("RFP") with express certifications that it complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP02000-R-4202.

53.     The pertinent Salient Characteristics set forth in the MPID, which were uniform across all RFPs, in relevant part, are as follows:

> 2.1.1 Ear plugs shall be designed to provide protection from the impulse          noises created by military firearms, while allowing the wearer to clearly  hear  normal  speech  and  other  quieter sounds, such as voice commands, on the battlefield.
>
> 2.2.2. The sound attenuation of both ends of the ear plugs shall be

tested in accordance with ANSI S3.19.

2.4 Workmanship. The ear plugs shall be free from all defects that detract from their appearance or impair their serviceability.

2.5 Instructions. Illustrated instructions explaining the proper use and handling of the ear plugs shall be supplied with each unit.

Solicitation No. SP0200-06-R-4202 at 41-42.

54.     Aearo/3M knew that at the time it made its certifications to the military the Dual-Ended Combat Arms™ did not comply with the MPID. Specifically, Aearo/3M knew the design defects could cause the earplugs to loosen in the wearer's ear, imperceptibly to the wearer.

55.     Aearo/3M knowingly used the deliberately flawed retest with the manipulated instructions of the closed end (olive) of the earplugs to sell Dual-Ended Combat Arms™ earplugs to the military with the representation that they possess a "22" NRR in the closed position.

56.     In addition, nothing in the instructions disclosed that it was necessary to instruct wearers of the Dual-Ended Combat Arms™ earplug to fold back the flanges before inserting the closed end into the ear.

57.     Aearo/3M also falsely reported to the U.S. military that the "open" (yellow end) of the Combatant Arms™ earplugs had a "0" NRR. The "0" NRR would allow servicemen to speak to fellow servicemen and hear enemies during combat.

58.     Due to the false certifications, Aearo/3M's bid was the prevailing bid which made it the exclusive provider of selective attenuation earplugs to the U.S. military.

59.     Since the adoption of the Dual-Ended Combat Arms™, the United States military has paid millions of dollars to purchase the defective earplugs.

60.     Since the adoption of the Dual-Ended Combat Arms™, millions of service members, including Plaintiff, Gale Jugovich, have relied on the misrepresentations of Aearo/3M in mistakenly believing that they were provided with adequate hearing protection.

61.     The military purchased, at a minimum, one pair of 3M's Combat Arms™ earplugs for each deployed solider involved in foreign conflicts between 2003 and 2015.

62.     In May 2016, Defendant was named in a sealed action alleging that the above described conduct constituted a protracted fraud perpetrated on the United States Military by 3M Company for more than a decade. *See, United States of America ex rei. Moldex-Metric, Inc. v. 3M Company,* United States District Court for the District of South Carolina, Case No. 3:16-1533-MBS.

63.     In July 2018, Defendant 3M agreed to pay $9.1 million to resolve allegations that it fraudulently supplied the United States with defective 3M Dual-Ended Combat Arms™ earplugs.

64.     Plaintiff could not, by the exercise of reasonable diligence, have discovered Defendants' wrongful acts as the cause of his injuries at the time the devices failed him or soon thereafter because, at the time of these injuries, the cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action. *See also* 50 U.S.C. § 3936.

65.     Further, the running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment. Through its affirmative misrepresentations and omissions, Defendant actively concealed from Plaintiff the risks associated with the defects in the Dual-Ended Combat Arms™ earplugs.

66.     As a result of Defendant's actions, Plaintiff was unaware, and could not have reasonably known or have learned through reasonable diligence that he had been exposed to the defects and risks alleged herein, and that those defects and risks were the direct and proximate result of Defendants' acts and omissions.

## COUNT I – STRICT LIABILITY

67.     All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

68.     Defendant 3M, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under §402(A) of the Restatement (Second) of Torts because:

   a. Defendant is engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing, and/or placing into the stream of commerce safety equipment, including the Dual-Ended Combat Arms™ earplugs, and the earplugs that caused Plaintiffs injuries;
   b. The product involved in the subject incident was marketed and placed in the general stream of commerce by Defendant 3M;
   c. The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce; and
   d. The product was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce in the defective condition for the reasons set forth above and below.

69.     The product was in a defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions.

70.     The product was in a defective condition as it came with absolutely no warnings or information or inadequate warnings or information regarding the dangers and risks associated with the product.

71.     The defective condition of the product caused Plaintiffs injuries and damages.

72.     Defendant 3M, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors, is strictly liable under § 402(A) of the Restatement of the Law of Torts (Second) and its progeny by:

    a.    designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was unreasonably dangerous;

    b.    designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was unsafe and defective;

    c.    designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was unsafe for all of its intended and foreseeable purposes and uses;

    d.    designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product in a defective condition;

    e.    designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that lacked all necessary safety features to protect users of said product;

    f.    designing, manufacturing, assembling, distributing, leasing, installing, selling and/or supplying a product that was without adequate, necessary and/or proper warning;

    g.    designing, manufacturing, assembling, distributing, leasing, installing, selling and/or supplying a product that could be designed more safely;

    h.    designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was without adequate, necessary and/or proper instructions;

    i.    failing to provide adequate instructions to users of this product regarding the safe use of this product;

    j.    failing to provide adequate instructions for the installation of this product;

    k.    failing to provide users of this product with adequate warnings, instructions and/or training regarding the proper use of this product;

    l.    performing inadequate testing and/or repairs to the product;

    m.    failing to provide service bulletins and/or change options regarding changes to safety standards regarding the product;

    n.    failing to retrofit the product with necessary safeguards to comply with industry standards;

    o.    failing to provide and install guards;

p.  failing to follow the National Safety Council hierarchy of safe product design;

q.  failing to design the Dual-Ended Combat Arms™ in compliance with ANSI S3.19.

r.  failing to design the Dual-Ended Combat Arms™ in a manner which would result in a NRR of "22" when used with the closed, olive end inserted, according to the standard fitting instructions provided by Defendant;

s.  failing to properly and thoroughly test the Dual-Ended Combat Arms™ earplugs;

t.  failing to properly and thoroughly analyze the data resulting from testing of the Dual-Ended Combat Arms™ earplugs;

u.  designing, manufacturing, distributing, and selling the Dual-Ended Combat Arms™ earplugs without an adequate warning of the significant and dangerous risks of the earplugs;

v.  designing, manufacturing, distributing, and selling the Dual-Ended Combat Arms™ without providing proper instructions to avoid the harm which could foreseeably occur because of using the earplugs in the manner directed by Defendant's standard fitting instructions;

w.  failing to fulfill the standard of care required of a reasonable and prudent manufacturer of hearing protection products, specifically including products such as the Dual-Ended Combat Arms™ earplugs; and

x.  continuing to manufacture and distribute the Dual-Ended Combat Arms™ earplugs to the U.S. Military after Defendant knew or should have known of its adverse effects and/or the availability of safer designs.

73.   By reason of the breach of duties by Defendant 3M, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, Plaintiff was caused to sustain disabling personal injuries, as set forth above.

74.   By conducting itself as set forth above, Defendant 3M's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Plaintiffs disabling personal injuries, including those set forth above.

75.   Defendant's   conduct   was   malicious, wanton, willful, oppressive, grossly negligent, and/or showed reckless indifference to the health and/or safety of service members of the United States military, including Gale Jugovich.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages together with lawful interest, attorneys' fees, costs of suit and all other claims available by law.

### COUNT II- FAILURE TO WARN

76.     All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

77.     At all times relevant to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute the 3M Dual-Ended Combat Arms™ with reasonable and due care for the safety and well-being of U.S. military service men and women, including Plaintiff, who were subject to and used the Dual-Ended Combat Arms™ earplugs during their service with the U.S. Military.

78.     Plaintiff was a foreseeable user of the Dual-Ended Combat Arms™ earplugs.

79.     The Dual-Ended Combat Arms™ earplugs are defective, in part, in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

80.     The Dual-Ended Combat Arms™ earplugs contained no warnings, or in the alternative, contained inadequate warnings and/or instructions, as to the risk that the Dual-Ended Combat Arms™ earplugs would allow for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to Plaintiffs hearing unbeknownst to him.

81.     The warnings and instructions that accompanied the Dual-Ended Combat Arms™ earplugs failed to provide that level of information that an ordinary consumer would expect when

using the Dual-Ended Combat Arms™ earplugs in a manner reasonably foreseeable to Defendant.

82.     Had Plaintiff received a proper or adequate warning as to the risks associated with the Dual-Ended Combat Arms™ earplugs, he would not have used the Dual-Ended Combat Arms™ earplugs.

83.     The Dual-Ended Combat Arms™ earplugs were the proximate cause of Plaintiffs hearing issues, hearing loss, and tinnitus because the design of the earplugs allows for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiffs hearing unbeknownst to him.

84.     By reason of the breach of duties by Defendant 3M, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, Plaintiff was caused to sustain disabling personal injuries, as set forth above.

85.     By conducting itself as set forth above, Defendant 3M's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Plaintiffs disabling personal injuries, including those set forth above.

86.     Defendant's    conduct    was    malicious, wanton, willful, oppressive, grossly negligent, and/or showed reckless indifference to the health and/or safety of service members of the United States military, including Gale Jugovich.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages together with lawful interest, attorneys' fees, costs of suit and all other claims available by law.

## COUNT III- NEGLIGENCE

87.    All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

88.    Defendant is in the business of designing, assembling, manufacturing, distributing, selling, and/or supplying safety products such as the Dual-Ended Combat Arms™.

89.    Defendant designed, assembled, manufactured, distributed, sold, supplied, and/or installed the Dual-Ended Combat Arms™.

90.    At all times relevant to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute the 3M Dual-Ended Combat Arms™ with reasonable and due care for the safety and well-being of U.S. military service men and women, including Plaintiff, who were subject to and used the Dual-Ended Combat Arms™ earplugs during their service with the U.S. Military.

91.    Defendant, by and through its agents, servants, workers, contractors, suppliers, distributors and employees, breached their duties as follows:

   a.   designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was unreasonably dangerous;
   b.   designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was unsafe and defective;
   c.   designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was unsafe for all of its intended and foreseeable purposes and uses;
   d.   designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product in a defective condition;
   e.   designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that lacked all necessary safety features to protect users of said product;
   f.   designing, manufacturing, assembling, distributing, leasing, installing, selling and/or supplying a product that was without adequate, necessary and/or proper warning;

g.    designing, manufacturing, assembling, distributing, leasing, installing, selling and/or supplying a product that could be designed more safely;

h.    designing, manufacturing, equipping, distributing, leasing, installing, selling and/or supplying a product that was without adequate, necessary and/or proper instructions;

i.    failing to provide adequate instructions to users of this product regarding the safe use of this product;

j.    failing to provide adequate instructions for the installation of this product;

k.    failing to provide users of this product with adequate warnings, instructions and/or training regarding the proper use of this product;

l.    performing inadequate testing and/or repairs to the product;

m.    failing to provide service bulletins and/or change options regarding changes to safety standards regarding the product;

n.    failing to retrofit the product with necessary safeguards to comply with industry standards;

o.    failing to provide and install guards;

p.    failing to follow the National Safety Council hierarchy of safe product design;

q.    failing to design the Dual-Ended Combat Arms™ in compliance with ANSI S3.19;

r.    failing to design the Dual-Ended Combat Arms™ in a manner which would result in an NRR of "22" when used with the closed, olive end inserted, according to the standard fitting instructions provided by Defendant;

s.    failing to properly and thoroughly test the Dual-Ended Combat Arms™ earplugs;

t.    failing to properly and thoroughly analyze the data resulting from testing of the Dual-Ended Combat Arms™ earplugs;

u.    designing, manufacturing, distributing, and selling the Dual-Ended Combat Arms™ earplugs without an adequate warning of the significant and dangerous risks of the earplugs;

v.    designing, manufacturing, distributing, and selling the Dual-Ended Combat Arms™ without providing proper instructions to avoid the harm which could foreseeably occur because of using the earplugs in the manner directed by Defendant's standard fitting instructions;

w.    failing to fulfill the standard of care required of a reasonable and prudent manufacturer of hearing protection products, specifically including products such as the Dual-Ended Combat Arms™ earplugs; and

x.    negligently continuing to manufacture and distribute the Dual-Ended Combat Arms™ earplugs to the U.S. Military after Defendant knew or should have known of its adverse effects and/or the availability of safer designs.

92.     By reason of the breach of duties by Defendant 3M, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, Plaintiff was caused to sustain disabling personal injuries, as set forth above.

93.     By conducting itself as set forth above, Defendant 3M's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Plaintiffs disabling personal injuries, including those set forth above.

94.     Defendant's   conduct was malicious, wanton, willful, oppressive, grossly negligent, and/or showed reckless indifference to the health and/or safety of service members of the United States military, including Gale Jugovich.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages together with lawful interest, attorneys' fees, costs of suit and all other claims available by law.

## COUNT IV- FRAUDULENT MISREPRESENTATION

95.     All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

96.     3M materially misrepresented to the Plaintiff that the Dual-Ended Combat Arms™ earplugs had been properly tested and were free from defects.

97.     3M knew   or   believed the Dual-Ended Combat Arms™ earplugs were improperly tested and/or suffered from material defects. 3M manipulated the testing of the Dual-Ended Combat Arms™ earplugs which resulted in a misleading NRR and inadequate fitting instructions.

98.    Defendant 3M made the false representations described herein with the intent of defrauding and deceiving Plaintiff and made the false representations with the intent of inducing Plaintiff to purchase, use, and/or continue to use the Dual-Ended Combat Arms™ earplugs.

99.    At the time Plaintiff used the Dual-Ended Combat Arms™ earplugs, Plaintiff was unaware of the  false representations made by 3M.

100.    At the time Plaintiff used the Dual-Ended Combat Arms™ earplugs, Plaintiff reasonably believed the false representations to be true.

101.    By reason of Defendant's conduct and in reliance of the false representation, plaintiff sustained serious and permanent disabling personal injuries, including those as set forth above.

102.    By reason of the breach of duties by Defendant 3M, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, Plaintiff was caused to sustain disabling personal injuries, as set forth above.

103.    By conducting itself as set forth above, Defendant 3M's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Plaintiffs disabling personal injuries, including those set forth above.

104.    Defendant's  conduct was malicious, wanton, willful, oppressive, grossly negligent, and/or showed reckless indifference to the health and/or safety of service members of the United States military, including Gale Jugovich.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages together with lawful interest, attorneys' fees, costs of suit and all other claims available by law.

Respectfully Submitted,

OLIVER LAW GROUP P.C.

Date: April 29, 2019                    /s/ Alyson Oliver_____
                                        Alyson Oliver, Esq.  MI State Bar No. (P55020)
                                        1647 W. Big Beaver Rd.
                                        Troy, MI 48084
                                        T: (248) 327-6556
                                        E: notifications@oliverlawgroup.com

                                        *Counsel for Plaintiff*